1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                   FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    GORDON BRENT PIERCE,                          No. C 10-3026 SI

9                   Plaintiff,
       v.                                          **ORDER DENYING PLAINTIFF'S**
10                                                 **MOTION FOR A PRELIMINARY**
     SECURITIES AND EXCHANGE                       **INJUNCTION, DISMISSING 10-3026 SI**
11   COMMISSION,                                   **FOR LACK OF JURISDICTION; AND**
                                                   **GRANTING APPLICATION FOR**
12              Defendant.                         **ENFORCEMENT OF DISGORGEMENT**
                                                   **ORDER IN 10-80129 MISC**
13   _____/

14   SECURITIES AND EXCHANGE                       No. C 10-80129 MISC
     COMMISSION,
15
                Applicant,
16     v.

17   GORDON BRENT PIERCE,

18              Respondent.

19   _____/

20
            On August 13, 2010, the Court held a hearing on Gordon Brent Pierce's motion for a temporary
21
     restraining order, preliminary injunction and a stay, and the SEC's application for an order enforcing
22
     an administrative disgorgement order.  For the reasons set forth below, the Court DENIES Pierce's
23
     motion and GRANTS the SEC's application.
24

25
                                      **BACKGROUND**
26
            These related cases arise out of two separate administrative enforcement proceedings brought
27
     by the Securities and Exchange Commission (SEC) against Gordon Brent Pierce, a Canadian citizen.
28

**United States District Court**
For the Northern District of California

The SEC initiated the first proceeding on July 31, 2008 by filing an Order Instituting Cease-and-Desist Proceedings ("First OIP") against Pierce, Lexington Resources, Inc., and Lexington's CEO Grant Atkins.  The SEC claimed that Pierce violated the registration provisions of the Securities Act of 1933, Sections 5(a) and 5(c), 15 U.S.C. § 77e(a) & (c), and the reporting provisions of the Exchange Act of 1934, Section 13(d) and 16(a), 15 U.S.C. §§ 78m(d) & 78p(a).  Wells Decl. Ex. A (C 10-3046).

The First OIP charged, *inter alia*, that Pierce transferred or sold Lexington Resources stock "through his offshore company," OIP ¶ 14, and that "Pierce and his associates" deposited shares in accounts at an offshore bank. *Id.* ¶ 15.  Pierce moved for a more definite statement, and in response the SEC took the position that transaction documents with which Pierce was familiar identified the "associates" and the "offshore company"; those documents indicated that the "offshore company" was Newport Capital Corp. (Newport) , and that  Jenirob Company, Ltd. (Jenirob) was one of the "associates."  Pierce asserts that "as a result of this informal amendment process, without ever actually moving to amend the First OIP, the Commission itself specifically claimed that, to the extent Newport and Jenirob were involved in the resale of Lexington stock by Pierce, the OIP included both for purposes of 'determining' whether Mr. Pierce committed registration violations, and 'whether Respondent Pierce should be ordered to pay disgorgement.'" Motion at 4:12-16.

Administrative Law Judge Foelak held a three day hearing in February 2009.  After the close of evidence, the SEC moved for the admission of new evidence obtained from a foreign regulator which purportedly showed that in addition to Pierce's sales through his personal account, Pierce had illegally sold 1.6 million shares of Lexington stock for $7.7 million through two Liechtenstein accounts that Pierce controlled in the names of Newport and Jenirob.  Pierce opposed the admission of the new evidence.  In an order dated April 7, 2009, the ALJ held that the new evidence would be admitted for purposes of liability, but not for disgorgement:

> The Order Instituting Proceedings (OIP) authorizes disgorgement.  At the October 10, 2008 prehearing conference, the undersigned advised that the disgorgement figure must be fixed so that Pierce could evaluate whether he wanted to present evidence concerning his ability to pay at the hearing, as required by the Securities and Exchange Commission rules; the Division stated that it was seeking $2.7 million in disgorgement. Tr. 8-9. The Division refined this figure in its December 5, 2008, Motion for Summary Disposition to $2,077,969 plus prejudgment interest, which it alleged are ill-gotten gains from Pierce's sale of allegedly unregistered stock.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

Under consideration is the Division's Motion for the Admission of New Evidence, filed March 19, 2009, and responsive pleadings.  The new evidence consists of information that the Division received from a foreign securities regulator, the Liechtenstein Finanzmarktaufsicht (FMA), on March 10, 2009.  The Division argues that the new material bears on the issue of liability and also shows that over $7 million in additional ill-gotten gains should be disgorged, representing alleged profits from the sale of allegedly unregistered stock by two corporations that Pierce allegedly controlled, Jenirob Company, Ltd. (Jenirob), and Newport Capital Corp. (Newport).  Pierce argues that admitting new evidence at this late date violates due process and provides additional exhibits that contravene the Division's new exhibits or diminish their weight.  In reply, the Division states the delay in producing the new material to the Division was entirely Pierce's fault, as he refused to supply it in response to a 2006 subpoena and actively opposed its release to the Division by the FMA.

Under the circumstances the record of evidence will be reopened to admit Division Exhibits 78 - 89 for use on the issue of liability, but not for the purpose of disgorgement based on sales of stock by Newport and Jenirob.  These entities are not mentioned in the OIP, and such disgorgement would be outside the scope of the OIP.  To ensure fairness, Respondent Exhibits A - M will also be admitted, and Pierce may offer additional exhibits and a supplement to his proposed findings of fact and conclusions of law and post-hearing brief by April 17, 2009, if desired.

Wells Decl. Ex. L (footnotes omitted).

On June 5, 2009, ALJ Foelak issued an Initial Decision finding that Pierce violated the Securities Act by offering and selling shares of Lexington Resources stock without the necessary registration for those offers and sales, and that he violated the Exchange Act by failing to file the required forms with the Securities and Exchange Commission to disclose his beneficial ownership of, and transactions in, Lexington shares.  The ALJ found that Pierce was unjustly enriched in the amount of $2,043,362.33, and she ordered Pierce to pay that amount in disgorgement, plus interest.  The disgorgement amount was based on evidence regarding sales of 300,000 shares made from Pierce's personal account.

The Initial Decision stated that the recommended sanctions were to take effect unless a party filed an appeal within 21 days.  No party filed an appeal, and on July 8, 2009, the SEC issued notice that the Initial Decision was final.  Buchholz Decl. Ex. B.  Under the SEC's Rules of Practice, Pierce was required to pay the disgorgement and interest by July 9, 2009, the first day after the Initial Decision became final.  17 C.F.R. § 201.601(a).  Pierce has not paid any amount of the disgorgement and interest. On June 8, 2010, the SEC filed an Application for an Order Enforcing Administrative Disgorgement Order Against Respondent Gordon Brent Pierce, *Securities and Exchange Commission v. Gordon Brent Pierce*, C 10-80129 MISC.

Also on June 8, 2010, the SEC initiated an administrative enforcement proceeding against Pierce,

Jenirob and Newport.  This proceeding alleges that Pierce reaped $7.7 million in unlawful profits by selling 1.6 million shares of stock through Jenirob and Newport.  In the second proceeding, the SEC alleges that Pierce controlled Lexington by holding a majority of its stock and by providing Lexington a consultant CEO who was employed by Pierce, and that Pierce made the stock sales through Newport and Jenirob while he directed a widespread scam and newsletter campaign touting Lexington's stock.  To date, no rulings have been made on these allegations.

On July 9, 2010, Pierce filed a lawsuit in this Court, *Gordon Brent Pierce v. Securities and Exchange Commission*, C 10-3026 SI.  Pierce seeks to enjoin the SEC from prosecuting the second administrative enforcement proceeding on the ground that it is barred by res judicata, collateral estoppel, issue preclusion, equitable estoppel and due process.  The complaint seeks declaratory and injunctive relief, and alleges three claims: (1) declaratory/injunctive relief – res judicata; (2) declaratory/injunctive relief – equitable estoppel; and (3) declaratory/injunctive relief – violation of Due Process.

Now before the Court are the SEC's application for an order enforcing the administrative disgorgement order, and Pierce's motion for a temporary restraining order, preliminary injunction, and stay.  Pierce seeks (1) a temporary restraining order and an order to show cause why a preliminary injunction should not be issued against the SEC enjoining it from proceeding with the second administrative proceeding; and (2) a temporary stay of the SEC's application for an order enforcing the disgorgement order pending a determination of the merits of the issues raised in the civil case filed by Pierce (10-3026 SI).

**DISCUSSION**

**I.    *Pierce v. SEC*, C 10-3026 SI**

A threshold question is whether the Court has jurisdiction over Pierce's complaint.  The complaint alleges that this case arises under the Securities and Exchange Acts, the Administrative Procedure Act, and the Due Process Clause of the United States Constitution, and that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. § 702 (the Administrative Procedure Act).  Compl. ¶¶ 4-5.  The complaint also alleges that the Court has the authority to grant the declaratory and injunctive relief sought pursuant to 28 U.S.C. §§ 2201 and

4

2202 (the Declaratory Judgment Act) and 28 U.S.C. § 1651 (the All Writs Act).  *Id.* ¶ 5.

The SEC asserts that the Securities and Exchange Acts do not confer jurisdiction because Pierce does not bring any claims under the Securities and Exchange Acts, and rather he brings this case to halt the SEC's enforcement of the federal securities laws against him.  The three claims for declaratory and injunctive relief alleged in the complaint do not arise under the Securities or Exchange Acts.  Pierce does not cite any authority for the proposition that an action seeking to enjoin an SEC administrative proceeding arises under the federal securities laws, and in his briefing, Pierce appears to have abandoned the assertion that this Court has jurisdiction based upon the federal securities laws.  The Court agrees with the SEC that the federal securities laws do not provide a basis for jurisdiction over Pierce's complaint.

The SEC also contends that the Administrative Procedure Act does not provide a basis for jurisdiction.  Pierce asserts that Section 705 of the APA provides a basis for jurisdiction.  *See* Pl's Motion at 13 n.4.  That section provides,

> When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

5 U.S.C. § 705.  However, as the SEC notes, Section 703 of the APA provides that "the form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute . . . ."  5 U.S.C. § 703.  The federal securities laws provide that judicial review of SEC orders is vested in the Court of Appeals.  Section 25(a) of the Exchange Act states,

> A person aggrieved by a final order of the Commission entered pursuant to this chapter may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business, or for the District of Columbia Circuit, by filing in such court, within sixty days after the entry of the order, a written petition requesting that the order be modified or be set aside in whole or in part.

15 U.S.C. § 78y(a)(1); *see also* 15 U.S.C. § 77i(a) (similar language in Securities Act); *see also Public Utility Comm'r of Oregon v. Bonneville Power Admin.*, 767 F.2d 622, 626 (9th Cir. 1985) ("[W]here a statute commits review of final agency action to the court of appeals, any suit seeking relief that might affect the court's future jurisdiction is subject to its exclusive review.").

Pierce simply asserts that the APA confers jurisdiction, *see* Pl's Motion at 13:n. 4, and does not address the authority cited by the SEC. Pierce's reply does not mention the APA as a basis for jurisdiction, and thus it appears that Pierce has abandoned this contention. The Court concludes that because Congress has established a specific statutory system for judicial review of SEC actions by the Court of Appeals, Pierce cannot rely on the APA's general review provisions as a source of jurisdiction.

Pierce suggests that the Court has jurisdiction pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 and 2202. However, "[t]he use of the declaratory judgment statute does not confer jurisdiction by itself if jurisdiction would not exist on the face of a well-pleaded complaint brought without the use of 28 U.S.C. § 2201." *Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093 (9th Cir. 1985) (citing *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 15-16 (1983)). Similarly, the All Writs Act is not an independent source of federal question jurisdiction. *See Stafford v. Superior Ct.*, 272 F.2d 407, 409 (9th Cir. 1959) ("The All Writs Act . . . does not operate to confer jurisdiction . . . since it may be invoked by a . . . court only in aid of jurisdiction which it already has."). As such, Pierce's reliance on *SEC v. G.C. George Sec. Inc.*, 637 F.2d 685 (9th Cir. 1981), is unavailing. There, the Ninth Circuit held that a district court had jurisdiction to enjoin an administrative proceeding which allegedly violated a settlement agreement that the district court had approved, where the settlement agreement expressly conferred jurisdiction on the court to enforce the terms of the settlement agreement. *Id.* at 687-88. The Ninth Circuit held that the district court's jurisdiction was based on the court's retained continuing jurisdiction, as well as the All Writs Act. *Id.* The Ninth Circuit remanded to the district court to consider whether administrative exhaustion was required. *Id.* at 688-89.

Finally, Pierce asserts that the Court has jurisdiction based on his due process claim, and under 28 U.S.C. § 1337, which confers original jurisdiction in actions arising under acts regulating commerce.[1] Pierce relies on *Martin v. Hodel*, 692 F. Supp. 637 (W.D. Va. 1998). In *Martin*, a coal mine operator brought suit to enjoin the government from prosecuting the operator in an administrative proceeding for

---

[1] The complaint does not allege 28 U.S.C. § 1337 as a basis for jurisdiction, and Pierce did not assert this argument until his reply papers. *See* Reply at 2:13-14. Nevertheless, the Court will consider this ground because the analysis of whether 28 U.S.C. § 1337 provides a basis for jurisdiction is essentially the same as whether the due process claim provides a basis for jurisdiction, namely whether the administrative agency is acting unlawfully, and thus falls in a narrow exception where the court has jurisdiction and a party is excused from exhausting administrative remedies.

**United States District Court**
For the Northern District of California

a violation of the Surface Mining Control and Reclamation Act.  The coal mine operator had previously been charged with a violation of the Act, and had prevailed when an administrative law judge found that the operator's mine was exempt from the Act.  *Id*. at 638.  Seven years later, the government charged the operator with the same violation of the Act based upon the same site.  The operator filed suit in federal court to enjoin the administrative prosecution, arguing "since the ALJ found Martin's Dickenson County mining operation within the Act's two acre exemption in 1981, OSM is barred from further action for the same violation at the identical site when Martin has engaged in no further mining at the site."  *Id*.  The government argued that the court lacked jurisdiction because the operator was required to exhaust his administrative remedies before seeking judicial review.  The district court held that while administrative exhaustion is generally required, "Individuals are not required to exhaust administrative remedies when the administrative agency is acting unlawfully."  *Id*. at 639.  The court held that "although the Act affords no specific review procedure for the illegal action by the Secretary, the court may rely on its general federal jurisdiction pursuant to 28 U.S.C.A. § 1337 (original jurisdiction for civil actions arising under any Act of Congress regulating commerce) to adjudicate this dispute."  *Id*.  The court relied on *Leedom v. Kyne*, 358 U.S. 184 (1958), in which the Supreme Court held that a district court had jurisdiction under 28 U.S.C. § 1337 to enjoin a federal agency when the agency was acting in excess of its delegated powers and contrary to a specific provision in its authorizing Act.

The exception recognized in *Leedom* is a narrow one.  The Ninth Circuit recently addressed *Leedom* in *AMERCO v. N.L.R.B.*, 458 F.3d 883 (9th Cir. 2006).  Although *AMERCO* arose in the labor context, as did *Leedom*, the Court finds *AMERCO* and its discussion of *Leedom* instructive.  In *AMERCO*, the NLRB brought an administrative complaint against AMERCO for alleged unfair labor practices.  After the administrative trial was underway, AMERCO filed suit in district court seeking an injunction to stop the administrative proceeding on due process grounds.  AMERCO alleged that the NLRB "had tried them in absentia for the first three weeks of the hearing, in an effort to gain an unfair advantage from their absence and lack of representation, and with full knowledge that a complaint ultimately would be filed against them."  *Id*. at 886.  The district court dismissed AMERCO's lawsuit for lack of jurisdiction, holding that AMERCO was required to exhaust its administrative remedies, and ultimately seek judicial review in the Court of Appeals.  *Id*.

**United States District Court**
For the Northern District of California

The Ninth Circuit affirmed.  The court held that "[r]egardless of the viability of AMERCO's constitutional claims, the district court lacked jurisdiction to remedy them" because Section 10 of the National Labor Relations Act vests exclusive jurisdiction in the Court of Appeals to review errors arising from unfair labor practice proceedings.  *Id*. at 887.  Section 10 of the NLRA provides,

> Any person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in . . . by filing in such a court a written petition praying that the order of the Board be modified or set aside.

29 U.S.C. § 160(f).  The Ninth Circuit noted that "Section 10 provides no separate process for obtaining injunctive relief prior to the issuance of a final order."  *Id*. at 887.  In addition, the court emphasized that "the exception advanced by AMERCO is inconsistent with the doctrine of administrative exhaustion. Exhaustion serves two vital purposes: first, to give the agency an initial opportunity to correct its mistakes before courts intervene; and second, to enable the creation of a complete administrative record should judicial review become necessary."  *Id*. at 888.  The Ninth Circuit also rejected AMERCO's argument that the district court had jurisdiction under *Leedom*.  The court noted that *Leedom* arose in the context of a Section 9 representation proceeding, for which Congress has not provided any judicial review.  *Id*. at 888-89.  "The exception[] of *Leedom* derive[s] from the inequity that would result if no court could review claims that the NLRB acted unconstitutionally or contrary to statutory authority in a Section 9 determination."  *Id*. at 889.  "[W]e hold that the *Leedom* . . . exception[] does not apply outside the context of Section 9 actions or other situations in which meaningful judicial review is unavailable."  *Id*. at 889-90.

As in *AMERCO*, the federal securities laws provide for exclusive judicial review of SEC orders in the Court of Appeals, and indeed the language of Section 10 of the NLRA is very similar to the language of Section 25(a) of the Exchange Act and Section 9(a) of the Securities Act.  Similarly, the federal securities laws do not provide for a separate process for obtaining injunctive relief prior to the issuance of a final order.  *AMERCO* emphasized the importance of administrative exhaustion, and the narrowness of the *Leedom* exception.  Pierce contends that exhaustion should be excused because pursuit of administrative remedies would be futile.  Pierce states that when he first learned that the SEC was contemplating a second enforcement action, he submitted a "Wells submission" to the SEC

8

asserting that a second administrative proceeding would be barred by res judicata, and that the SEC nevertheless initiated the second proceeding.  However, as the SEC notes, under Section 554(d)(2) of the APA, the members of a body of an agency, such as the SEC, are expressly permitted to participate both in the "investigative or prosecuting functions for an agency" and the agency's review of any recommended decision from that proceeding.  *See* 5 U.S.C. § 554(d)(2)(c); *see also San Francisco Mining Exch. v. SEC*, 378 F.2d 162, 167-68 (9th Cir. 1967) (holding that fact that Commission "had considered the staff report in determining whether to authorize the proceeding" "does not tend to show that any Commissioner had prejudged the case, or was biased and prejudiced concerning it").  The pending administrative proceeding affords a full range of quasi-judicial review and protections to Pierce, and Pierce has the opportunity to submit any relevant evidence and assert his defenses, including the arguments that the proceeding is barred by res judicata and equitable estoppel.  *See* 17 C.F.R. § 201.220(c) (providing that "[a] defense of res judicata, statute of limitations or any other matter constituting an affirmative defense shall be asserted in the answer" to an Order Instituting Proceedings).

Numerous courts have rejected similar efforts to enjoin SEC administrative proceedings, and held that parties must exhaust administrative remedies prior to seeking judicial review, including when the party seeking the injunction claims that the administrative proceedings violate due process.  *See SEC v. R.A. Holman & Co.*, 323 F.2d 284, 287 (D.C. Cir. 1963) (reversing district court order enjoining SEC administrative proceeding because administrative remedies not exhausted; plaintiff claimed due process violation and that SEC Commissioner should be disqualified); *Wolf Corporation v. SEC*, 317 F.2d 139, 142 (D.C. Cir. 1963) (upholding refusal to enjoin SEC's stop order proceeding against issuer's proposed securities registration, and holding that claims relating to evidence allegedly seized in violation of the Fourth Amendment and challenges to the Commission's authority must first be made to the Commission); *First Jersey Sec. Inc. v. SEC*, 553 F. Supp. 205, 208-09 (S.D.N.J. 1982) (refusing to enjoin SEC administrative proceedings, where plaintiff alleged various constitutional and statutory violations because Second Circuit precedent mandates that "the procedures established for review of SEC actions deprive this court of jurisdiction over suits that seek to interrupt the agency proceedings").

Pierce is correct that in exceptional circumstances courts have enjoined administrative proceedings, such as *Martin v. Hodel*, 692 F. Supp. 637 (W.D. Va. 1998), where the court found the

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

administrative agency was acting ultra vires.  Pierce also relies on *Continental Can Company, U.S.A. v. Marshall*, 603 F.2d 590 (7th Cir. 1979), and *Safir v. Gibson*, 432 F.2d 137 (2d Cir. 1970).  However, *Martin*, *Continental Can*, and *Safir* are distinguishable because in those cases, the plaintiffs filed suit in federal court after they had prevailed on the merits in administrative proceedings, and then were subject to new administrative proceedings charging them with liability based on the precise conduct adjudicated in the earlier proceedings.  The courts enjoined the new administrative proceedings on the ground that those proceedings were vexatious, harassing, and barred by res judicata.  Here, in contrast, in the first administrative proceeding Pierce was found liable and ordered to pay disgorgement based on sales of stock from his personal account, while the second administrative proceeding names Pierce, Newport and Jenirob, and seeks disgorgement based on sales of stock through Newport and Jenirob.  On the face of it, Pierce's two administrative proceedings are not analogous to the circumstances presented in *Martin*, *Continental Can*, and *Safir*.

Moreover, in *R.R. Donnelley & Sons Co. v. FTC*, 931 F.2d 430, 433 (7th Cir. 1991), the Seventh Circuit questioned the continuing vitality of *Continental Can* in light of the Supreme Court's decision in *FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980.  In *R.R. Donnelley*, the court held that even when the second administrative proceeding relitigates the issues raised in a prior action, federal courts lack jurisdiction to intervene in the administrative process because there is no final administrative order subject to judicial review.  In *R.R. Donnelley*, a commercial printer filed a petition in the Court of Appeals seeking review of the FTC's denial of the printer's motion to dismiss an administrative complaint.  The printer argued that the administrative complaint was barred by issue preclusion because a district judge had previously found, in a separate proceeding and after a trial, in the printer's favor.  The printer argued, as Pierce does here, that the injury it was suffering was being required to undergo the costly and time-consuming administrative process.  *Id*. at 430.

> We may assume that the ALJ is mistaken, that the FTC will eventually hand Donnelley the laurel.  We may even assume that if the FTC does not do this, a court will set aside its order.  Still, this case is far from over.  The long road ahead is precisely Donnelley's beef. [*FTC v. Standard Oil Co. of California*, 449 U.S. 232 (1980) ( *Socal* ),] held that the filing of a complaint is not a final decision even though it finally determines that there is reasonable cause to proceed.  Resolution of an issue is one thing, resolution of the case another.

*Id*. at 431.  The court held that there is no civil "right not to be tried": "An inadequate opportunity

(sometimes even an inadequate incentive) to present one's case the first time may permit another shot in civil litigation.  Legal errors by the judge may be overturned and the case re-done.  Preclusion in a civil case creates a 'right not to be tried' only in the sense that it creates a right to win; but many legal doctrines do that without also creating a right to interlocutory appellate review."  *Id*. at 432-33.  With regard to *Continental Can*, the Seventh Circuit noted that *Continental Can* did not discuss jurisdiction or the final order rule, and "whether there is *any* life to *Continental Can* after *Socal* remains to be seen." *Id*. at 433 (emphasis in original).

This Court emphasizes that it is not ruling on the merits of Pierce's res judicata defense, or any other defense; those defenses should be made to the SEC, and ultimately the Court of Appeals if Pierce does not prevail before the agency.  However, the Court does find that on this record, Pierce has not shown that shown that this case falls within the narrow class of cases where administrative exhaustion is excused and federal court intervention in ongoing administrative proceedings is warranted.

## II.    *SEC v. Pierce*, 10-80129 MISC

The SEC has filed this application to enforce the disgorgement order pursuant to Section 20(c) of the Securities Act and Section 21(e) of the Exchange Act.  Those sections provide that "Upon application of the Commission, the district courts of the United States . . . shall have jurisdiction to issue writs of mandamus commanding any person to comply with the provisions of this chapter or any order of the Commission made in pursuance thereof."  15 U.S.C. § 77r(c) (Securities Act); *see also* 15 U.S.C. § 78u(e) (similar provision regarding Exchange Act).  Because they are initiated by an "application," a Section 20(c) proceeding and a Section 21(e) proceeding may be decided in a summary proceeding rather than in a formal civil action under the Federal Rules of Civil Procedure.  *SEC v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003).  The Ninth Circuit has explained,

> Summary proceedings are particularly appropriate where the merits of the dispute have already been litigated extensively before the NASD, the Commission, and on appeal to a circuit court, where the only remedy sought is enforcement of the previously upheld order. . . .
>
> Section 21(e) is an enforcement mechanism; its purpose is to ensure that NASD members comply with the Commission.  There is no evidence in the statute or its legislative history from which to infer that § 21(e) was enacted to create another layer of adjudication.  Rather, § 21(e) authorizes district courts to issue writs of mandamus,

United States District Court
For the Northern District of California

injunctions, and orders commanding NASD members, who violate Commission orders, to comply with the Commission or face federal contempt charges. The forcefulness of § 21(e)'s language is further evidence that Congress intended to authorize a more summary procedure. By the time a § 21(e) application is filed by the Commission, the time and opportunity for adjudicating the merits of the claim have been exhausted; all that is left to do is enforce the order. Appellants should not be permitted to exploit this statutory provision to delay and prolong the enforcement of a duly issued order of the Commission.

*Id*. at 657-58. In a summary proceeding, the respondent must be provided an opportunity to respond to the application. *Id*. at 658-59. However, the respondent cannot relitigate the merits. *Id*. at 658.

Here, Pierce does not dispute that the administrative disgorgement order is final. Instead, Pierce seeks a temporary stay of the enforcement proceeding until the propriety of the new administrative action is litigated. As discussed *supra*, the Court concludes that Pierce must exhaust his administrative remedies in the new action, and thus this Court lacks jurisdiction over his federal action. Further, the new administrative action has no impact whatsoever on Pierce's obligation to pay the disgorgement order. Pierce cannot and does not challenge the validity of the disgorgement order before this Court; instead, he challenges the validity of the new administrative action. As the SEC argues, if Pierce is found liable in the new administrative proceeding, Pierce must pay the current $2 million disgorgement amount plus any additional disgorgement ordered based on the second action. If, on the other hand, Pierce is found not liable in the new administrative proceeding, Pierce must still pay the $2 million disgorgement order.

Accordingly, the Court GRANTS the SEC's application enforcing the administrative disgorgement order. The Court orders that within 21 days from the date of this Order, respondent Gordon Brent Pierce shall comply with the Commission's administrative disgorgement order by paying the full amount of $2,043,362 in disgorgement, plus pre-judgment and post-judgment interest at the rate established by 26 U.S.C. § 6621(a)(2), beginning July 1, 2004 through the last day of the month preceding the month in which payment is made, compounded quarterly. Through May 31, 2010, total pre-judgment and post-judgment interest was $867,495. Payment of disgorgement and interest shall be made to the Commission, in accordance with Rule 601 of the Commission's Rules of Practice, 17 C.F.R. § 201.601, by United States postal money order, wire transfer, certified check, bank cashier's check, or bank money order made payable to the Securities and Exchange Commission. Payment shall be

accompanied by a letter that identifies the name and number of the administrative proceeding against Pierce and that identifies Pierce as the respondent making payment.  A copy of the letter and the instrument of payment shall be sent to counsel for the Division of Enforcement.

## CONCLUSION

For the foregoing reasons, the Court DENIES Pierce's motion for a TRO, preliminary injunction and stay (Docket No. 6 in C 10-3026 SI) and GRANTS the SEC's application for an order enforcing administrative disgorgement order (Docket No. 1 in C 10-80129 MISC).  The Court DISMISSES *Pierce v. SEC*, C 10-3026 for lack of jurisdiction and failure to exhaust administrative remedies.  The clerk shall close both files.

**IT IS SO ORDERED.**

Dated: September 2, 2010

_____
SUSAN ILLSTON
United States District Judge